572 A.2d 44

**ABINGTON FIRE COMPANY, Petitioner**

v.

**COMMONWEALTH of Pennsylvania, PENNSYLVANIA EMERGENCY MANAGEMENT AGENCY, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 14, 1989.

Decided Feb. 21, 1990.

Reargument Denied April 19, 1990.

120

Howard Gershman, Boroff, Harris & Heller, P.C., Plymouth Meeting, for petitioner.

Mark L. Goodwin, for respondent.

Before·DOYLE, BARRY and PALLADINO, JJ.

PALLADINO, Judge.

Abington Fire Company (Petitioner) appeals from a decision of the Pennsylvania Emergency Management Agency (PEMA) which denied Petitioner's application for a subsidized loan under the Pennsylvania Volunteer Loan Assistance. Program.

Petitioner contracted with Pierce Manufacturing, Inc. (Pierce) for the rebuilding of Petitioner's 1979 Mack CF custom pumper (vehicle). Petitioner filed a loan application with PEMA requesting $35,000 for the repair and rehabilitation of the vehicle. Petitioner alleges that before PEMA had acted upon Petitioner's loan application, and approximately four months ahead of schedule, Pierce completed work on the vehicle. Petitioner alleges that it borrowed funds from its sinking fund capital account, paid Pierce, and took possession of the vehicle. By letter,[1] PEMA rejected

1. PEMA's adjudication is by letter without findings of fact. However, oral argument and the parties' briefs demonstrate that there is no material dispute as to the facts. Therefore, in the interest of judicial economy, we find that a remand for findings unnecessary. *See*

Petitioner's loan application stating, in pertinent part: "Under the existing conditions, the Abington Fire Company does not qualify for funding under Section 113.6(b) of the Rules and Regulations governing the Volunteer Loan Assistance Program, as it is our understanding that the Abington Fire Company paid for the 1980 Mack Pumper in question." [2]

On appeal to this court,[3] Petitioner argues the following: 1) repayment of its internal loan is a valid use of borrowed funds; 2) PEMA's decision is based upon regulations that are more restrictive than allowed by the enabling act, the Volunteer Fire Company, Ambulance Service and Rescue Squad Assistance Act (Law);[4] and 3) the Law permits loans for refurbishing equipment whether or not a debt has been incurred.

PEMA relies upon 4 Pa.Code § 113.6(b) which states as follows:

(b) No loan provided under this chapter shall be used for the acquisition of existing facilities. No loan shall be used for operating expenses, nor shall it be used to reduce any debt or other obligation issued prior to November 4, 1975. No loan shall be used for payment of fees for the designing or planning of facilities or preparation of application. No loan shall be used for the purpose of investment or reinvestment.

PEMA clarified its decision stating that, if it were to grant Petitioner's loan application, the funds would be used for operating expenses. Petitioner alleges that the funds would be used to restore its sinking fund capital account.

---

*Appeal of Mellon Bank,* 78 Pa. Commonwealth Ct. 463, 467 A.2d 1201 (1983).

**2.** Record, Exhibit K.

**3.** Our scope of review of administrative agency decisions is limited to a determination of whether an error of law has been committed, whether constitutional rights have been violated and whether findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704.

**4.** Act of July 15, 1976, P.L. 1036, *as amended,* 72 P.S. §§ 3943.1–3943.-19.

At oral argument, counsel for PEMA did not dispute that the funds would be placed in a sinking fund capital account.

A sinking fund is a fund which is segregated from general operating expenses and is accumulated for a specific purpose. By definition, a sinking fund is not used for operating expenses. Therefore, PEMA erred as a matter of law in rejecting Petitioner's loan application and citing as the reason violation of 4 Pa.Code § 113.6(b).

■ PEMA also asserts a second reason for rejecting the Petitioner's loan application.[5] PEMA argues that granting Petitioner's loan application would violate 4 Pa.Code § 113(a)(3) which states as follows:

(a) The Agency is authorized to make loans for the following:

. . . .

(3) Refinancing a debt incurred through other lending institutions for contracts entered into after November 4, 1975 and used for the purchase of apparatus equipment, for the construction or modernization of facilities, or for the modification of apparatus equipment in order to comply with NFPA standards.

PEMA asserts that the loan which Petitioner seeks to repay is not "incurred through other lending institutions" and therefore not a valid use for the funds.

Section 4(a)(4) of the Law, 72 P.S. § 3943.4(a)(4), states in part as follows:

(a) The department is hereby authorized, upon application of any volunteer fire company, volunteer ambulance service and volunteer rescue squad, to make loans to said volunteer companies for the following purposes:

---

5. We note that this is not the reason that PEMA initially gave Petitioner for rejecting the application. However, Petitioner fully briefed this issue and we find no prejudice caused by PEMA's late assertion of this reason to support its decision.

. . . .

(4) Refinancing debt incurred or contracts entered into after November 4, 1975 and used for the purchase of apparatus equipment or for the construction or modernization of facilities or for modification of apparatus equipment in order to comply with National Fire Protection Association standards.

Petitioner argues that the Law does not define what a debt is and that its internal loan is an approved accounting procedure. Petitioner asserts that PEMA's restriction of the term debt to commercial loans is unjustified and defeats the purpose of the Law which is to aid volunteer fire companies.

Section 2 of the Law, 72 P.S. § 3943.2, entitled "Legislative findings; declaration of purpose," states in part as follows:

(b) It is the purpose of this act to implement ... [acts authorizing indebtedness by volunteer emergency services upon approval of electors] by providing for loans to volunteer fire, ambulance and rescue companies to protect the lives and property of the citizens of the Commonwealth pursuant to and to execute the above favorable referenda. The General Assembly has determined that volunteer fire companies are most in need of loans, and therefore, intends that, to the extent possible, a significant portion of the Volunteer Companies Loan Fund be used to provide loans to volunteer fire companies....

In light of the Legislature's clear intent to aid "to the extent possible" volunteer fire companies, we must construe the meaning of the term "debt" liberally in order to effectuate the Law's beneficent purposes. *See Seybold v. Department of General Services*, 75 Pa. Commonwealth Ct. 118, 461 A.2d 353 (1983).

We conclude that PEMA's definition of the term "debt" meaning only debt incurred through other lending institutions is too narrow given the express purpose of the Law. It is clear that borrowing funds from an internal sinking

124

fund capital account is an acceptable accounting procedure. We will not require volunteer fire companies to abandon such a procedure and believe that such procedure is acceptable under the law.

Accordingly, we reverse.

## ORDER

AND NOW, February 21, 1990, the order of the Pennsylvania Emergency Management Agency in the above-captioned matter is reversed.